Judge Buckner,
delivered the opinion of the court.
At the Nelson county court, August term, 1828, a paper, purporting to be the last will and testament of Thomas Higdon, sr. was proved by the subscribing witnesses thereto, and admitted to record. His property, real and personal, was thereby directed, to be equally divided between his children Margaret Speak, Thomas Higdon, jr., William Hig-don, Mary Hagan, and the children of his deceased son, Leonard P. Higdon, giving to the latter the portion, which would have been given to their father, if living, as ;-n equal devisees.
In March 1829, the heirs of said Leonard instituted this suit, by bill in chancery, against the other devisees, and against James Speak, husband of Margaret, and Joseph Hagan, husband of Mary; alleging, that said paper is not the last will and testament of said Thomas Higdon, sr. deceased; for that, at. fhe time the same was published, he, the aforesaid Thomas Higdon, was not of disposing mind and memory; praying, that it might be set aside by a decree of the chancellor.
The defendants answered, denying the allegation* of the bill: insisting, that their ancestor, in the aHjoymesi *49 of'the full vigor of his intellect, had made, and duly ■published, the paper alluded to, as his last will; and that it had been fairly and legally admitted to record.
¡phe party who holds the upon'whom, consequently, the onwpra* £"a3 the right to open and con-gu^ent^' h
Under the directions of the statute on such subjects, an issue was tried, testing the validity of the will, and the jury found, that it was the last will and testament •of said Thomas; and that, at the time of making and publishing the same, the testator was of disposing mind and memory.
Upon a final hearing of the cause, the circuit court ¡dismissed the bill with costs; and the plaintiffs in error prosecute this writ of error, tosreverse the decree.
The only errors assigned, necessary to be considered, are, that the court, on the trial of the issue, improperly rejected the teslimony of James Speak, tendered by the plaintiffs in error; and that it erroneously refused, to permit them to open and conclude the -argument before the jury.
From a bill of exceptions, it appears, that the circuit court decided in favor of the right of the counsel for the defendants in error, to open and conclude the argument before the jury, upon the triad of the issue; and if the plaintiffs were entitled to it, they might, according to the doctrine settled in the cases of Churchill vs. Rogers, Har. 185, and of Goldsberry vs. Stuteville, III Bibb, 346, properly compiain of the decision.
We shall therefore examine the ground of the alleged error. The right of the party, who holds the affirmative of an issue; and upon whom, consequently, the onusprobandi devolves, to open atid conclude the argument, seems to be universally acknowledged; and has been long acquiesced in,not only in the courts of this country, but of Great Britain. This right, as it may. at this day be well termed, sanctioned, as it has been, by long and uninterrupted practice, is too well settled to be now questioned. But were ifpro-per to enter upon the investigation of it, unfettered by precedent, we cannot say, that a better rule on the subject can be adopted. We know that on the trial of controverted cases, and especially of issues submitted to a jury, each of the parties litigant attach great importance to the right of opening and concluding the *50 argument; and although it may be, and frequently is, exercised, by ingenious and eloquent counsel, to the great perplexity of the jury, the danger of such a result is equally great, whether it be yielded to the plaintiff or defendant. The right seems to have been inseperably connected with the burthen of proof; and ■that burthen, regarding the most obvious reason and convenience, must be placed on him who holds the affirmative. Probatio incumbí! ei, qui ullegat; negantis • autem, per rerum noturam, nulla est probatio. 1 f the issue is, whether a person be of sound mind; the soundness of mind bei¡% alleged by defendant, he must prove it, and is entitled to the opening of the case. See I Starkie, on evidence, 376, and the authorities there cited.
But it has been insisted that the issue, in the present case, relates exclusively to the insanity of Thomas Higdon, deceased, at the time when he published the writing purporting to be his last will and testament, which is susceptible of as positive proof as sanity; that the plaintiffs in error made this allegation, and, to support the issue, were hound to prove -it. This assumption, as to the issue in this case, cannot be maintained in point of fact, as we shall show. We admit as a general proposiiion. that he who affirms a matter must prove it. in I Starkie, on evidence,it; is said, that “proof of allegation of deficiency, lies on the party making it, although it imply a negative; for this is not to prove a mere negative, but to prove an actual relation, in point of magnitude or value. Thus, upon au issue, whether land, assigned for payment of a legacy, was deficient in value, it was held, that the party who alleged that it was deficient, was forced to prove it.” A deficiency as to the number of acres; in other words, the true number contained in a tract, can be ascertained by admeasurement and calculation; and he, who makes the allegation, may be held to the proof of it, witnout any violation of the true principles of evidence. If the deficiency relate to value, a similar remark will apply. There cannot be any infallible standard of valuation resorted to; •but the means, of making the calculation, may be equally accessible to each of the parties litigant; and no satisfactory reason can be assigned, why the bur- *51 then of proof should be taken from the person making the allegation.
Whenever there is a presumption that a fact exists, hew-hoouakes an allegation to the contrary, must prove it.
Deeds ai ppre-sun.ed to have been di-liver-ed on the day of their date. He, who alleges, that the delivery of- a deed was made, on a different day fiom that of its dat -, mast prove it.
On a motion to quash a recognizance for want of a judgment as its basis, the plaintiff in the motion must-prove, negatively, that there is no suchjudgment, as that which is recited in the recognizance. On the plea of no consideration, the onus probandi lies on the party pleading it.
When a ven-dee setk® a rescission of an executory contract for land, alleging that vendor has no title, and demanding an exhibition of it, vendor must prove his title to.the land..
*51 Wherever a presumption arises, that a fact exists, he who makes an allegation to the contrary, must prove it. Thus, deeds are presumed to have been delivered on the day they bear date; so that he, who alleges that the delivery was-on a different day, must prove it; Breckenridges vs. Ford, III Monroe, 54. On a motion to quash a recognizance, for want of a judgment, proof, that there is no such judgment, must be.made by the plaintiffs in the motion, to show negatively, that there was no such judgment; for, the recital' in the recognizance, is, prima facie, evidence of it; White vs. Richardson, &c. III Monroe, 176. On the plea of no consideration, the onus probancJi rests with the person pleading it. The statute requires it; and the deed, which is the foundation of the action, is presumed to be founded on a valid consideration; Rudd vs. Hanna, &c. IV Monroe, 531. But when the rescission of an executory contract for land, is sought, by bill in chancery, by the vendee against the vendor, alleging that he had no title, and demanding an exhibition of it, the vendor must prove title, if he has any;-because, the obligation to convey creates no presumption of title. But how can this doctrine be applied to the case before us? The statute declares, that when the validity of a will is contested, by bill,, in the circuit-court, an issue shall be made up, whether thet writi'ng'produced be-the will of the testator or not. The defendants-in error averred, that Thomas Higdon, deceased, published, as his last will and testament, the paper exhibited; that it was, indue form of law, attested by three subscribing witnesses, at the request, and in the presence, of the testator; and that, at the time of doing so, he was of sound mind and disposing memory; and that i-t was his last will and testament; all which they were ready to verify. The plaintiffs replied, that the paper referred to, was not the .will and testament of said Thomas Higdon, deceased. Now, it may be safely asserted, that the defendants have assumed, in every point of view in which it can be considered, an affirmative position. It may not have been necessary to state the facts at length, upon which they relied, to show that it was the will of Thomas Higdon, deceased; but the *52 statement of them presents most clearly, the nature-of the-issue, and the stand which they took; and of that assumed hy the plaintiffs in error. A view of the issue as formed, shows that it did not relate to the insanity of the testator, exclusively. Every point necessary, to show whether the paper presented wae his last will and testament, or not, was presented. Suppose that it had appeared beyond doubt, that Thomas Higdon, (the alleged testator,) was of sound mind and disposing memory, the jury would nevertheless have found the paper, under the issue, not to be his will, unless proof had been introduced, showing other necessary facts to constitute it his will. But had the issue been so formed, as to relate to insanity only; and it had been derided, that thereby the bur-then of proof had devolved on the plaintiffs in error, it must have resulted from a state of case, which we have seen did not exist; and not, that insanity is as-susceptible of as direct and positive proof as sanity. Insanity, even if it imply a negative, may be satisfactorily established. Whether it is, in the nature of things, capable of as unerring proof as sanity, is a metaphysical inquiry, the correct solution of whichp would cast no light on this subject. It may, however, be remarked, that the former may be assumed; aK the indications of it, may be feigned and deceptions., The latter cannot be falsely assumed. Mind, the intellectual or intelligent power, in -man, cannot be touched or seen; but its effects are felt, and its energies displayed, by testimonies which defy incredulity.
We have seen, however, the form of the issue in this.case. Is the trial of such pn issue, to take place in the circuit court, uninfluenebd by the judgment of the county court.?- That it is, cannot admit of a rational doubt. It is not the trial of an appeal from the-county court.
The statute declares, that “ the certificate of the oaths of the witnesses, at the time of the first probate shall be admitted as evidence, to have such weight as the jury shall think it deserves.” That is, the party supporting the will, may offbr it if he please; but if the subscribing witnesses are to be had, he may ¿till introduce them. This provision w-as a wise pre. caution; because, as seven years are allowed, and, in. *53 deed, seven years after the removal of disability, on the part of the person interested, to contest the validity of the will, the subscribing witnesses might, in the mean time, die, or gojbeyond the reach of the party, and the jurisdiction oT the court.
it a general rule, that a VartU' wjH “ot to i^ive evidence in hir ow“ case*
When there are several ajfaotkme®11 delicto, and upon the the pait of the plaintiff anil defen■dants, there is no evidence agains one of the defendants, he may be acquitted, and examined as a witness for the others.
*53 How the question should have been decided, had the plaintiffs in error tendered an issue, admitting every thing necessary, to show that the paper exhibited was the last will and testament of Thomas Iiigdon, deceased, except his alleged insanity, and attacking it on that ground only, and their adversaries had joined in the issue tendered, need not be decided; because it has not been presented. The bill itself does not contain any such express acknowledgements, although it may be inferred from its language, that they intended to attack the will on that ground only. Nor is it necessary to determine, whether the defendants in error could have been forced into a position, in which they would not have held the affirmative. Be that as it may, the opposite party permitted them, without objection, to assume an affirmaiive position, and lake upon themselves the burthen of proof. Having done so, the plaintiffs cannot complain, that the well established rule has been observed.
It remains to be considered, whether the circuit court erred in rejecting the testimony of Speak. He was a party to the issue; and the general rule is, that a party cannot be permitted to give evidence in his own cause. This, it is said, is not founded merely on the consideration of his interest, but partly on principles of general policy, and for the prevention of perjury. The latter reason is not consistent with the practice in a court of equity’; in which a party may be called to answer on oath, where he is subject to as strong temptations as in a court of law. To this general rule however: whatever may be the true reasons, on which it rests, there are exceptions.
Thus where, in an action for tori, there are several defendants; and upon the close of the evidence, on the part of the plaintiff and defendants, there is no evidence against a particular one of them, he may be acquitted, and examined as a witness for the others, Other examples might be given, but they would cast j\o light on the subject of the rejection-of Speak’s tes *54 timony. Upon the competency of a witness, who is a party to the record, there is not an entire accordance between the modern and ancient authorities. In a recent case, a plaintiff wa&by consent of the defendant, allowed to be examiíS^d as a witness in the cause, although he came to defeat the claim of a co-plaintiff. The case is said to have been so peculiarly circumstanced, as to preclude all danger of perjury. is not, however, authority in this court; and if tire rule, that a party to a suit should not be admitted as a witness on the trial of it, be founded, in part,, on the ground of policy, in guarding against perjury, it is safest not to infringe it, even by consent of the p irties.
Husband and wife cannot be witnesses for or against each other.
But a more conclusive argument, against the competency of the witness, is to be found in the fact, that although he professed a willingness to be examined, his wife, who was also a party to the recordrand interested, as the record shows, joined the other deferp-dants in error, in their objections to his admission. It has been urged that, as the will of the testator gave to each of his children an equal portion of his estate, and as the law, in case the will was set aside, would make a similar division of the property, it was a matter of no consequence, to Speak or his wife, whether it stood or fell. It is true, that such are the provisions of the will; but that neither Speak nor his wife, would be gainer or loser, by the decision of the cause, does not necessarily follow. Suppose the plaintiffs in error had succeeded, would not the defendants have been bound for costs? or if, before the suit in chancery had been decided, the husband bad died, would not Mrs. Speak have been liable? They might, however,have been gainers by the destruction of the will. If the other devisees, or some of them, had been advanced, by the testator, when they were married, and Mrs. Speak had not, he might, in that way, have been interested.
But, independently of other cohsiderations, the fact* that his wife objected to his admission as a witness, should be considered as sufficient to exclude him; for it is a rule, that the husband and wife cannot be witnesses for, nor against, each other. The identity of their interests renders it improper, that the one should nppearas a witness for the other; and the most obvious *55 manciples of public policy declare, that neither should be allowed to give evidence against the other, as it would be stronglvgto^ulated to create distrust, and destroy that harJ^Hand conjugal affection so im-por tan t, not onlj^Hp happiness of themselves and family, but to thelRi-ests of society. So important is this rule, that the law will not sanction its violation, even with the consent of the parties.
when either the husband other is an incompetent witness, whether the suit be civil or cnmma • i
Chipeze and T. Crittenden, for plaintiffs; C. Wick-liffe, for defendants.
In II Starkie, on evidence, 70?, it is said, speaking of husband and wife,“where either of them is a party, the rule seems to be universal, that the other is altogether incompetent, in either civil or criminal ceedings.
. We are therefore of opinion, that the circuit court did not err, in either of the opinions complained of, in the assignment of errors.
The decree is affirmed, with costs.